**Earl F. JONES et ux., Petitioner,**

v.

**TARRANT UTILITY COMPANY, Respondent.**

**No. C–1111.**

Supreme Court of Texas.

July 7, 1982.

Rehearing Denied Oct. 6, 1982.

Robert J. Wilson, Burleson, for petitioner.

Brown, Herman, Scott, Dean & Miles, Grant Liser, Fort Worth, for respondent.

SPEARS, Justice.

Earl and Lucille Jones brought this suit against Tarrant Utility Company (hereinafter T. U. C.) to recover damages allegedly caused by water overflowing from two T. U. C. water storage tanks. The trial court directed a verdict in favor of T. U. C. The court of appeals affirmed. 626 S.W.2d 912. We reverse the judgments of both courts and remand the cause to the trial court for new trial. The issue before us is whether the trial court correctly withdrew the case from the jury and rendered judgment as a matter of law for T. U. C.

In 1962 Mr. Jones built a skating rink in Rendon, Texas. A year later, Jones donated several lots behind the rink to T. U. C. so that a water system for Rendon could be constructed. T. U. C. accepted the lots and built a large well and tank storage system which they completed by 1965.

T. U. C. erected two storage tanks on a slightly elevated area directly behind the skating rink. One storage tank was situated on the ground; the other tank was built on a tower. According to the Joneses and several other witnesses, the tanks began to overflow frequently sometime in 1974. The water flowed down the small hill and directly toward the rink. Jessie Graham, T. U. C.'s general manager, testified that from sixty to one hundred gallons of water a minute could flow from the tanks. Jones testified that from 1974 to 1979, the tanks would overflow sixty or sixty-five times a year.

At first, the Joneses' drainage system diverted the water. Sometime in 1976 or

1977, however, the drainage ditch system "collapsed" and the water began to flow directly to the rink. Some of the water would gather against the skating rink where it would stand until it evaporated. The remainder of the water would flow past the rink into the road. Jones soon began to notice cracks in the walls of the rink. Soon after that, the maple skating floor began to swell and buckle. Eventually Jones was forced to close the skating rink to the public.

The Joneses brought suit against T. U. C. alleging trespass, nuisance, negligence and *res ipsa loquitur.* After the close of evidence, the trial court withdrew the case from the jury and rendered judgment for T. U. C. as a matter of law. The court of appeals affirmed, holding: (1) there was no evidence of trespass because there was no evidence that T. U. C. intentionally caused and allowed the water to flow onto the property; (2) the doctrine of *res ipsa loquitur* was inapplicable because there was no evidence that the overflow normally would not occur in the absence of negligence, or that the instrumentality causing the accident was in the control of T. U. C.; (3) the Joneses failed to prove that the overflowing water caused the damage to the rink; (4) there was no evidence of a specific act of negligence; and (5) the theory of nuisance was inapplicable because there was no evidence of a specific act of negligence.

■ A defendant is entitled to judgment as a matter of law only when reasonable minds cannot differ in their decision. On appeal, the appellate court must determine if there is any evidence of probative force to raise a fact issue on any theory of recovery. The court must consider all of the evidence in the light most favorable to the plaintiff, disregarding all contrary evidence and inferences. If there is any evidence of probative force on any theory of recovery, that issue must go to the jury. *Collara v. Navarro,* 574 S.W.2d 65 (Tex. 1978).

We hold the Joneses produced some evidence on the issues of *res ipsa loquitur* and intentional trespass, and therefore these theories of recovery should have been submitted to the jury.

■ The Joneses pled *res ipsa loquitur* which is simply a rule of evidence by which negligence can be inferred by the jury. It is not a separate cause of action from negligence and does not become inapplicable if proof of specific acts of negligence is introduced. *Mobil Chemical Co. v. Bell,* 517 S.W.2d 245 (Tex.1974). The purpose of *res ipsa* is to relieve the plaintiff of the burden of proving a specific act of negligence by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident. *Mobil Chemical Co. v. Bell, supra; Owen v. Brown,* 447 S.W.2d 883 (Tex.1969).

■ The doctrine of *res ipsa loquitur* is applicable only when: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to be under the management and control of the defendant. *Marathon Oil Co. v. Sterner,* 632 S.W.2d 571 (Tex. 1982).

■ As to the first requirement, the court of appeals held that the Joneses needed to introduce expert testimony that water continuously overflowing from water tanks was the type of accident that normally would not occur without negligence. We disagree. In many *res ipsa* cases, expert testimony is not necessary to establish the inference of negligence because the jury can rely on their own general knowledge. *Mobil Chemical Co. v. Bell, supra* at 252. In *Harmon v. Sohio Pipeline Co.,* 623 S.W.2d 314 (Tex.1981), we held that oil spilling out of an oil pipeline was the type of accident that does not normally occur in the absence of negligence. Similarly, in the case before us, water should not continuously overflow from water tanks. Even T. U. C.'s general

manager testified that it "wasn't good business to have water overflowing from the tanks." Water repeatedly overflowing from a water tank, like oil spilling out of an oil pipeline, is the type of accident that normally would not occur absent negligence.

The second requirement—that the instrumentality be in the control of the defendant—is necessary to support the inference that the defendant was the negligent party. Jessie Graham, T. U. C.'s general manager, testified that the water tanks were equipped with a sensing unit in the top of the tank. When the water reached the top of the tank, a short would occur in the circuit and a signal then would be relayed back to the main control center so the pumping system would shut off. T. U. C. used telephone lines and cable for their relay system. The court of appeals held that because the sensory system employed telephone company cables and lines, the instrumentality was not in the control of T. U. C.

■ Graham could trace the cause of only one instance of flooding back to the sensory device. He offered no explanation for the numerous other instances of flooding to which the Joneses and other witnesses testified. However, even if all of the instances were caused by a malfunction of the sensory unit, T. U. C. would still be responsible. T. U. C. stipulated that they owned and operated the water system. It is not clear from the record whether T. U. C. owned the sensory device; however, it is inferable that T. U. C. made a conscious decision to employ the system in question. T. U. C. owed the public a duty to prevent water from continuously overflowing and damaging the property of others. *Turner v. Big Lake Oil Co.,* 96 S.W.2d 221 (Tex. 1936). It was their responsibility to select a system that would be dependable. Since the Joneses introduced evidence of both requirements of *res ipsa loquitur,* the trial court erred in withdrawing the issue from the jury.

■ The court of appeals also held that the Joneses failed to introduce any evidence that the damage to the skating rink was proximately caused by T. U. C.'s negligence. Specifically, the court held that the cause in fact of damage to the skating rink had not been established beyond the point of conjecture. In so holding, the court incorrectly applied the "no evidence" standard of review.

In the present case, Kenneth Groves, the Joneses' expert witness, testified that the damage was directly caused by the repeated overflow from T. U. C.'s water tanks. This testimony directly conflicted with the testimony of Bruce Martin, T. U. C.'s expert witness, who stated that the building's leaky roof, its age, its lack of adequate foundation, the soil and normal rainwater runoff caused the damage to the rink.

Under the "no evidence" test, the court of appeals should have disregarded Martin's testimony and considered Groves' testimony in the light most favorable to the Joneses. Under that test, Groves' testimony constituted some evidence from which the jury could reasonably conclude that the overflow caused the damage to the skating rink.

■ It is immaterial that T. U. C. introduced conflicting testimony. When the parties introduce conflicting testimony in a jury trial, as the parties did in this case, it is the duty of the jury to determine which witness is more credible.

■ The court of appeals held that there was no evidence of intentional trespass because there was no evidence that T. U. C. intentionally caused and allowed the water to flow from the tanks onto the Joneses' property. Mr. Jones testified that he made at least fifty complaints about the flow of water but that these were ignored by T. U. C. or that T. U. C. would deny the water was running. He also testified that once the water continued to flow for two weeks before T. U. C. shut it off, that he asked T. U. C.'s field supervisor to correct the problem, and that T. U. C. refused to

accept responsibility for the overflows or to do anything to correct the problem. We hold that Mr. Jones' testimony raised a fact issue that T. U. C. intentionally permitted the water to overflow from the tanks onto the Joneses' property.

 The court of appeals also held that intentional trespass would not have been a proper theory to submit to the jury. The court cites *Turner v. Big Lake Oil Co., supra,* for the proposition that recovery of damages for the escape of stored waters can be predicated only on the theory of negligence. *Turner v. Big Lake Oil Co.* simply states that a plaintiff cannot recover damages under a theory of strict liability; it does not hold that a plaintiff cannot recover under a theory of intentional tort.

In view of our holding, we find it unnecessary to address the other issues raised. We reverse the judgments of both courts below and remand the cause to the trial court for new trial.