No. 04-98-00387-CV


Virginia TOVAR and Herodes Albino Tovar,

 Individually and as Next Friend of

Damaris Amanda Tovar and Aissa Lynn Tovar
,

Appellants



v.



Rosa Maria MAZZA,


Appellee



From the 63rd Judicial District Court, Val Verde County, Texas


Trial Court No. 21418


Honorable George Thurmond, Judge Presiding



Opinion by: Phil Hardberger, Chief Justice


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Alma L. López, Justice


Delivered and Filed: March 31, 1999


AFFIRMED


 Virginia Tovar appeals a take-nothing verdict rendered against her on her personal injury
claim against Rosa Mazza arising out of an automobile accident. In a sole point of error, Tovar
contends that the trial court erred in denying Tovar's motion for new trial because: 1) the evidence
was factually insufficient to support the jury's verdict; and 2) the trial court allowed the jury to
consider inadmissible evidence which caused the jury to render an improper verdict. 

 We affirm.

I.

 Tovar and her two daughters were involved in an automobile accident with Mazza at a four-way intersection regulated by a four-way traffic light. Tovar and her daughters sustained injuries
in the accident, and sued Mazza claiming negligence and negligence per se. Mazza counterclaimed,
asserting that Tovar's negligence was the cause in fact of Tovar's injuries. Upon trial to a jury, the
jury found that neither Tovar nor Mazza was negligent, rendering a take-nothing verdict against
Tovar. Tovar filed a motion for new trial, which the trial court denied.

II.

 Tovar contends that the trial court erred in denying her motion for new trial because: 1) the
evidence was factually insufficient to support the jury's verdict; and 2) the trial court allowed the
jury to consider inadmissible evidence which caused the jury to render an improper verdict.
Specifically, Tovar contends that the trial court erred in allowing testimony about the presence or
use of car safety seats and the rapid timing/changing of the traffic lights, and that the jury
impermissibly considered this evidence in reaching its verdict. Tovar says that the evidence was so
overwhelmingly in her favor that the jury's verdict can only be explained by this purportedly
inadmissible evidence.

 Tovar has two threshold problems on appeal. First, Tovar requested a complete record in the
case, but the record on appeal does not contain trial exhibits, a transcription of voir dire proceedings,
or closing arguments. Second, Tovar did not object at trial to much of the testimony that she now
complains of on appeal, nor did she raise an objection in her motion for new trial.

A. Incomplete Record on Appeal

 Tovar requested a complete record in the case, but the record on appeal does not contain trial
exhibits, or a transcription of voir dire proceedings or closing arguments.

 An appellant is required to provide an entire statement of facts to the appellate court when
challenging the factual sufficiency of the evidence. Schafer v. Conner, 813 S.W.2d 154, 155 (Tex.
1991); Land v. AT & S Transp., Inc., 947 S.W.2d 665, 667 (Tex. App.-- Austin 1997, no writ). A
partial statement of facts is insufficient for appellate review. Schafer, 813 S.W.2d at 155; Land, 947
S.W.2d at 667. Without a complete or agreed statement of facts, we presume the omitted evidence
supports the trial court's judgment. Schafer, 813 S.W.2d at 155; Land, 947 S.W.2d at 667. Thus,
an appellant cannot meet its burden to show that the judgment is erroneous in the absence of a
complete or an agreed statement of facts. Schafer, 813 S.W.2d at 155; Englander Co. v. Kennedy,
428 S.W.2d 806, 807 (Tex. 1968).

 The record is missing the voir dire transcript, closing statements, and exhibits. Tovar's
attorney stated at oral argument that these proceedings were not recorded. Because the voir dire and
closing statements are not evidence, it is doubtful they would have added anything to our decision.
However, the record does not contain any of the exhibits, which may or may not have been helpful.
We do not know because they are not before us. We are required to presume that the missing
exhibits support the jury's verdict. Schafer, 813 S.W.2d at 155.

 We need not decide the effect of the incomplete record because we find the evidence before
us is factually sufficient to support the jury's verdict.



B. Failure to Object Tovar did not object at trial to the testimony about car safety seats, and only objected to
testimony about the timing sequence of traffic light on the grounds that it was hearsay and it was
evidence of an unpled intervening cause. The failure to object to the introduction of evidence at trial
waives the right to complain of it on appeal. Tex. R. App. P. 33.1(a). Tovar also did not raise the
issue of this evidence in her motion for new trial. A party cannot raise an issue for the first time on
appeal. Nebgen v. Minnesota Min. & Mfg. Co., 898 S.W.2d 363, 367 (Tex. App. -- San Antonio
1995, writ denied).

 The testimony on the timing of the lights issue is minimal, but appears to be relevant and
admissible. The testimony on the safety belt issue related to a baby seat found on the street next to
the truck after the accident, which had been in the back of the truck before the accident. Two bills
of exception were made on the direct issue of whether Tovar and her children were restrained by
safety belts or car seats at the time of the accident (they were not), but the jury heard no testimony
to this effect.

 An advocate, in the heat of battle, may honestly feel there is no evidence to support a jury's
adverse verdict, but the record before us reveals sufficient evidence, albeit not overwhelming
evidence, upon which the jury could find against Tovar, exclusive of this complained-of evidence. 

C. Factual Sufficiency of the Evidence

 Tovar complains that the evidence is factually insufficient to support the jury verdict, and
thus, the trial court erred in denying her motion for a new trial. A party challenging the factual
sufficiency of the evidence to support a jury verdict must raise the issue in a motion for new trial in
order to preserve the complaint for appeal. Tex. R. Civ. P. 324 (b)(2); Cecil v. Smith, 804 S.W.2d
509, 510 (Tex. 1991). We review a trial court's denial of a motion for new trial under an abuse of
discretion standard. See Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985).
A trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to
guiding principles. Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997); Mercedes-Benz Credit
Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996). "Where there are two permissible views of the
evidence, the factfinder's choice between them cannot be clearly erroneous." Goode, 943 S.W.2d
at 446.

 When reviewing a factual sufficiency challenge to a jury verdict on which the complaining
party bore the burden of proof, we consider the totality of the evidence, and should set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); Dyson v. Olin Corp., 692
S.W.2d 456, 457 (Tex. 1985); In re King's Estate, 244 S.W.2d 660, 661 (1951). When the parties
introduce conflicting testimony in a jury trial, it is exclusively within the province of the jury to
determine the credibility of the witnesses and the relative weight to be afforded to their testimony.
Jones v. Tarrant Util. Co., 638 S.W.2d 862, 866 (Tex. 1982). Novosad v. Mid-Century Ins. Co., 881
S.W.2d 546, 548 (Tex. App.--San Antonio 1994, no writ). The jury is free to believe one witness
and disregard others. Peterson v. Reyna, 908 S.W.2d 472, 476 (Tex. App.--San Antonio 1995),
aff'd as modified on other grounds, 920 S.W.2d 288 (Tex. 1996); Novosad, 881 S.W.2d at 548. As
an appellate court, we do not pass on the credibility of the witnesses or the weight given their
testimony, and shall afford due deference to the jury's resolution of conflicts of evidence. See Carr
v. Jaffe Aircraft Corp., 884 S.W.2d 797, 799, 802-03 (Tex. App.--San Antonio 1994, no writ). "In
considering great weight points complaining of a jury's failure to find a fact [or failure to find
damages], courts of appeals should be mindful that a jury was not convinced by a preponderance of
the evidence." Novosad, 881 S.W.2d at 548 (citing Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex.
1988)).

 The accident in question occurred at the intersection of Chevrolet Drive, which runs east and
west, and Avenue F, which runs north and south. Chevrolet is a two-lane road with a turn lane.
Avenue F has two northbound and southbound lanes separated by a median, plus left-turn lanes on
either side. Apparently Avenue F turns onto Chevrolet to one side, and in to a mall to the other side.
The intersection is controlled by four-way traffic lights with turn signals. At the time of the
accident, Mazza was traveling eastbound on Chevrolet and Tovar was traveling northbound on
Avenue F.

 The following eyewitnesses testified:

 1. Virginia Tovar

 Tovar testified that she was traveling northbound in the left lane closest to the turning lane
on Avenue F. She testified that she continued at a steady speed through the intersection at Chevrolet
because she had a green light. As she approached the intersection, Tovar says, she saw a car pull
out from her left side, and she tried to swerve but could not avoid hitting Mazza's car. Tovar was
unable to tell how far from the intersection she was when she determined that the light was green.

 2. Manuel Herrera

 Herrera is a local police officer who responded to the accident call. He testified that four
witnesses came forth to give reports: Rodolfo Rodriguez, Leon Humphreys, Joe Beall and Frances
Heath. Beall told Herrera that Tovar had the green light, but said nothing to him about Mazza. Both
Heath and Humphreys also told Herrera that Tovar had the green light. Rodriguez completed a
witness report, wherein he stated that Mazza struck Tovar as Tovar was traveling north on Avenue
F. Mazza told Herrera repeatedly and consistently that she had the green light, even after he told her
that the witnesses were saying that Tovar had the green light. Herrera did not know the witnesses'
vantage points in relation to the lights.

 Herrera testified that this intersection is considered a high-volume traffic accident
intersection, and that he had heard complaints about the quick sequencing of the light changes.
According to Herrera, the stretch of pavement on Chevrolet across Avenue F is quite long compared
to other intersections, considering the median and the improved shoulders. Herrera testified that,
as Mazza was traveling eastbound on Chevrolet, she would have physically been in the intersection
for a longer period of time than Tovar because the distance she needed to travel to cross the
intersection was greater. Herrera testified that, at this particular intersection, when one light was
green, the opposite light would necessarily be red.

 3. Frances Heath

 Heath was driving behind Tovar in the right lane at the time of the accident. As she was
entering the intersection behind Tovar (approximately one car length), Heath heard the collision. At
that time, she looked up at the light, and saw that it was green. According to Heath, there were
several cars in the turning lane as she approached the intersection. Heath told the officer who came
to the scene that they (the traffic on Avenue F) had the green light when the collision occurred.
Heath did not see Mazza's car until the accident had occurred, and she did not know which street or
lane Mazza came from, how fast she was traveling, or the color of the light when Mazza entered the
intersection.

 4. Leon Humphreys

 Humphreys was walking through the mall parking lot when he observed the accident
between Tovar and Mazza. Upon hearing the sound of the accident, Humphreys looked up at the
light, which, from his vantage point, would have been the light facing westbound traffic. He was
at least 150 yards from the light, but said that the light was red at that time. Humphreys didn't see
the vehicles until about two-thirds of the way into their collision. Humphreys did not tell the officer
that Tovar had a green light; only that the light was red when he looked at it. On cross-examination,
he said that he never saw the light facing Mazza as she entered the intersection; he was only able to
see the light facing in the opposite direction of Mazza.

 Humphreys acknowledged that this intersection was recognized by most people in the area
as one of the "most dangerous intersections." However, he had not heard of nor had any knowledge
of complaints about the quick timing sequence of the lights at that intersection.

 6. Alicia Mireles

 Mireles was the only passenger in Mazza's car at the time of the accident. Her memory of
the accident was not particularly clear because she was reading a newspaper circular when the
accident happened. The fact that she was generally unfamiliar with Del Rio, having only been there
one time before, did not help her clarity. She testified in deposition that she did not remember
Mazza stopping at the intersection, but rather going straight through. She also testified that she and
Mazza were traveling on Avenue F, not Chevrolet Drive. On cross-examination, she clarified that
she meant Chevrolet Drive.

 7. Robert Beall

 Beall was traveling eastbound on Chevrolet, intending to make a right-hand turn onto Avenue
F. He was driving approximately five to six car lengths behind the car driven by Mazza. He
observed her slowly enter the intersection as the light was turning from green to yellow. His
perception was that she was driving slowly either because she was confused or did not know which
direction to go. According to Beall, there was one vehicle stopped in the turn lane, and he saw the
pickup truck driven by Tovar on the south side of the stopped vehicle. Beall thought the pickup was
traveling either at the speed limit or slightly faster. Beall could not tell whether Mazza stopped at
the intersection. Beall did not tell any officer that Tovar's light was green, and that he did not know
whether she had a green light. He asserted that the light was never red when Mazza was approaching
the intersection. Beall admitted that he might have told the officer that the yellow light may have
turned red as she went through the intersection, but that the light was changing from green to yellow
as Mazza entered the intersection.

 8. Rose Mazza

 Mazza testified that as she was traveling eastbound on Chevrolet, the light at Avenue F was
red. She stopped at the red light, then proceeded through the intersection once the light turned green.
Mazza said that it turned green immediately after she stopped. Mazza insisted that her light was
green, so she assumed that Tovar's light was red. Mazza's testimony was that she was going to
continue to travel straight, not turn, on Chevrolet.

 9. Rodolfo Rodriguez

 Rodriguez was traveling southbound on Avenue F on the inside lane. He testified that he was
driving about three to five car lengths behind Mazza, and first noticed her vehicle as it bore into the
left-turn lane, preparing to turn left. All of the witnesses except Rodriguez testified that Mazza was
traveling on Chevrolet, not Avenue F. Rodriguez said that the light was red when he approached
the intersection. He said that he remembered Mazza making a left-hand turn from Avenue F toward
the mall. He testified that Tovar's truck was in the outside lane at the stop light, or, that as Mazza's
vehicle entered the lane, Tovar's truck came through the intersection and the accident occurred on
the outside lane. He told the officer at the scene that Mazza "had blown through a red light." He
admitted that he could not see the color of the light on Chevrolet Drive, but had told the officer at
the scene that he thought Tovar had the green light because Mazza ran the red light.

 This is a classic situation of conflicting evidence where the credibility of the witnesses and
the weight afforded to their testimony is within the province of the jury. On balance, we agree that
there is more evidence to support Tovar's contention that she had the green light than there is
evidence that Mazza had the green light. Had the jury found for Tovar we would affirm. But they
did not. The quantity of evidence is not dispositive. In light of the testimony of the relative length
of the intersection, the possibility that the lights turned colors quickly, the conflicting testimony
about who had the green light, and the confusing testimony of Rodriguez and Mireles, the jury's
verdict is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust." Clearly there were credibility issues and disputed fact issues, but, affording due deference
as we must to the jury's reconciliation of those conflicts, we overrule Tovar's point of error and find
that the evidence is factually sufficient to support the jury's verdict. III.

 We affirm the trial court's entry of judgment based on the jury's take-nothing verdict against
Tovar.

 PHIL HARDBERGER,

 CHIEF JUSTICE


DO NOT PUBLISH

Return to
Fourth Court of Appeals