Herman **SANDERS**, Appellant

v.

**NAES CENTRAL, INC. d/b/a Amtech Elevator Services, Appellee**

**NO. 01–14–00958–CV**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued June 16, 2016

Rehearing Overruled July 28, 2016

Mac W. Hancock III, Houston, TX, for Appellant.

Bradley M. Bingham, Marcus W. Waters, Neal D. Kieval, Bingham, Mann & House, Houston, TX, for Appellee.

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

## OPINION

Sherry Radack, Chief Justice

Appellant, Herman Sanders, appeals the trial court's granting of the no-evidence motion for summary judgment filed by Appellee, Naes Central, Inc. d/b/a Amtech Elevator Services [Amtech], on Sander's negligence claim. We affirm.

## BACKGROUND

On August 16, 2010, Sanders was in a building with an elevator maintained by Amtech. Sanders entered the elevator on the second or third floor. Sanders alleges that the elevator fell to a few feet below the first floor. He was taken to the hospital and claims injuries as a result of the fall.

Sanders filed suit in 2012, alleging negligence. Later, Amtech filed a no-evidence motion for summary judgment, identifying three elements of Sanders's negligence claim that it asserted Sanders had no evidence to support: that Amtech owed any duty to Sanders, that Amtech breached any duty, or that Sanders suffered any injury as a result of any breach. In his response to the motion, Sanders asserted that the doctrine of *res ipsa loquitur* applied to establish the breach element. In its reply, Amtech argued that Sanders did not meet the requirements for *res ipsa*

*loquitur.* After a hearing, the trial court granted the motion.

## NO–EVIDENCE MOTION FOR SUMMARY JUDGMENT

In his two issues, Sanders argues that the trial court erred by granting summary judgment on his negligence claim against Amtech.

### A. Standard of Review

■ After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. Tex.R. Civ. P. 166a(i); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.–Houston [1st Dist.] 1999, no pet.). The burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. Tex.R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex.2006). The trial court must grant the motion unless the non-movant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Flameout Design,* 994 S.W.2d at 834; *see also Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997) (holding "[m]ore than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

### B. Law Applicable to *Res Ipsa Loquitur*

■ In response to Amtech's no-evidence motion for summary judgment, Sanders asserted that he could satisfy the breach element based on the legal principle of *res ipsa loquitur. Res ipsa loqui-*

*tur,* a Latin phrase meaning "the thing speaks for itself," is a rule of evidence permitting a fact-finder to infer negligence "where it appears that the character of the accident is such that it would not ordinarily occur in the absence of negligence and the evidence shows that the instrumentality causing the injury was under the management and control of the defendant." *Goodpasture, Inc. v. Hosch,* 568 S.W.2d 662, 664 (Tex.Civ.App.–Houston [1st Dist.] 1978, writ dism'd) (citing *Owen v. Brown,* 447 S.W.2d 883, 886 (Tex.1969)). It is not a separate cause of action. *Jones v. Tarrant Cnty. Util. Co.*, 638 S.W.2d 862, 865 (Tex.1982). "The purpose of *res ipsa* is to relieve the plaintiff of the burden of proving *a specific act of negligence* by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident." *Id.* (emphasis added).

■ A plaintiff seeking to apply *res ipsa loquitur* must establish "(1) the character of the accident is such that it would not ordinarily occur in the absence of negligence and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant." *Jones,* 638 S.W.2d at 865. "The first factor is necessary to support the inference of negligence and the second factor is necessary to support the inference that the defendant was the negligent party." *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 251 (Tex.1974). Unless both factors are present, the factfinder cannot reasonably infer from the circumstances of the accident that the defendant was negligent. *See Bond v. Otis Elevator Co.,* 388 S.W.2d 681, 686 (Tex.1965).

### C. Analysis

Sanders, citing *Bond,* contends that he met the first factor because, in that case,

the supreme court stated that "an elevator's going into a freefall and injuring the petitioner [is] such an accident which does not ordinarily occur without negligence, and is such an accident, that from the mere showing that it happened, negligence of those in control may be inferred." 388 S.W.2d at 684. However, assuming, without deciding, that the first factor has been met, we nonetheless conclude that the second factor, i.e., control, is lacking in this case.

 Amtech claims that the second factor—management and control—is not met because other potential defendants in the case also had control over the elevator and its components.[1] "The doctrine of res ipsa loquitur is not available to fix responsibility when any one of multiple defendants, wholly independent of each other, might have been responsible for the injury." *Esco Oil & Gas, Inc. v. Sooner Pipe & Supply Corp.*, 962 S.W.2d 193, 195 (Tex. App.–Houston [1st Dist.] 1998, pet. denied). In contrast, multiple defendants having "joint control of the instrumentality causing the injury" do not defeat the doctrine's application. *Id.*; *see also Bond*, 388 S.W.2d at 685 (holding "exclusive control" does not mean liability must be limited to a single entity; joint control is sufficient). Two cases from the Texas Supreme Court show the difference in how multiple defendants may or may not be held responsible for management and control.

In *Bond*, the plaintiff, who was injured when an elevator went into a "free fall," sued the building owner and the company that manufactured, sold, installed, and independently contracted with the building owner to inspect and maintain the elevator. 388 S.W.2d at 682. Liability was asserted based on the independent contractor's failure to properly maintain the elevator. *Id.* at 686. The supreme court considered whether the doctrine of res ipsa loquitur applied, i.e., whether either defendant exercised sufficient control over the elevator. *Id.* at 684–85. The court concluded that the building owner's duty to maintain its elevators could not be delegated to the independent contractor it had hired to maintain the elevators. *Id.* at 686. The court further held that the building owner and the independent contractor had joint control over the maintenance of the elevator. *Id.* at 684–85. As such, the court's finding of joint control was based on the building owner's vicarious liability because "liability against the [building owner] can be predicated upon the negligence of its independent contractor[.]" *Id.* at 686. Because there was joint control over the elevator, based on vicarious liability, the doctrine of res ipsa was properly applied. *Id.*

In contrast, in *Marathon Oil Co. v. Sterner*, the plaintiff, an employee of Morrison Construction Company, sued Marathon Oil Company, a company for which Morrison

1. The dissent argues that we cannot consider this issue because we would be "affirming the trial court's ruling on a ground that no one argued at trial or on appeal[,] and that "Amtech did not object to Sander's evidence on this ground[ ]" and "did not present evidence on this supposed theory." However, this case involves a no-evidence summary judgment. Once Amtech filed its motion, the burden shifted to Sanders to present a scintilla of evidence so as to raise a fact question. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). Amtech had no burden to present any argument or evidence. Whether Amtech presented a scintilla of evidence, i.e., whether the res ipsa presumption applies here, is a question of law for the Court. *See Sw. Bell Telephone Co. v. Garza*, 164 S.W.3d 607, 621 (Tex.2004) (noting that whether evidence is more than a scintilla is a question of law). Further, in its Reply to Plaintiff's Response to Defendant's No Evidence Motion for Summary Judgment and in its brief before this Court, Amtech argued that it did not have the requisite control to apply res ipsa loquitur.

was hired to provide repair and maintenance work at Marathon's plant. 632 S.W.2d 571, 572 (Tex.1982). The plaintiff claimed he was injured by a gas that escaped at Marathon's plant while he was working there for Morrison and sought to hold Marathon responsible under the doctrine of *res ipsa loquitur* when no one could identify the source of the gas. *Id.* at 572–573. The supreme court held that res ipsa could not be applied because "it is at least as probable that the negligence, if any could be attributed to a Morrison Construction employee working in the vessel . . ." and that "[w]hen the plaintiff's evidence only shows it is equally probable that the negligence was that of another, the court must direct the jury that plaintiff has not proven his case." *Id.* at 574. The court further noted that "[t]he possibility of other causes for the accident besides the defendant's negligence does not have to be eliminated, but the likelihood of other causes must be so reduced that the jury can reasonably find that the negligence, if any, was committed by the defendant." *Id.* Because there were two possible defendants, either of which could have been separately negligent in performing its own duty, the doctrine of *res ipsa loquitur* was not applicable. *Id.*

It is important to note that in *Bond*, wherein joint control was found, both defendants were being held liable for the same negligent act, i.e., the defendants were jointly responsible for the same duty—maintenance of the elevator. However, in *Sterner*, either possible defendant, acting alone, could have caused the plaintiff's injury. *See Clay v. BMS, Inc.*, 61 S.W.3d 489, 492 (Tex.App.–San Antonio 2001, pet. denied) (holding that plaintiff who sued one defendant alleging negligent installation and another defendant alleging negligent maintenance could not rely on *res ipsa loquitur* doctrine because "[plaintiff] alleged the injury could have been caused by either [of the defendants]."); *see also Parsons v. Ford Motor Co.*, 85 S.W.3d 323, 332 (Tex.App.–Austin 2002, pet. denied) (holding that, in light of plaintiff's agreement that three possible scenarios led to damage, and only one of those scenarios was attributable to defendant, *res ipsa loquitur* was not applicable).

Here, Sander's claims against Amtech are that Amtech negligently "inspected and repaired the elevator [in question] prior to the accident as part of its routine maintenance." However, Sanders sued at least three other defendants in this suit[2] and in its Original Petition, Amtech asserted that the elevator was negligently "manufactured, installed, inspected, and maintained," not merely the negligent maintenance and inspection that Sanders now attributes to Amtech. There is simply no evidence that the accident was necessarily caused by negligent inspection and maintenance, the only duties arguably owed by Amtech.[3] Because the elevator's failure could have been caused by negligent manufacture and/or installation, which are duties owed by other parties who are not vicariously liable for Amtech, *res ipsa loquitur* is not applicable.

2. Sanders's petition asserted claims against the building owner, Harris County, and the elevator manufacturer, Otis Elevator, and several other, arguably misnamed defendants. The claims against these other parties were disposed of and are not a part of this appeal. The case proceeded to summary judgment with Amtech as the only remaining defendant.

3. Sanders's expert, Gene Stiffler, provided an affidavit in which he opined that negligent maintenance and inspection caused the accident, but his affidavit was struck because he was not timely presented for deposition. The propriety of this ruling is not before us in this appeal.

Indeed, it is the presence of other potential defendants that distinguishes this case from *Bond v. Otis Elevator.* In *Bond,* Otis Elevator *manufactured, installed, and exclusively maintained* the elevator involved. 388 S.W.2d at 682. And, the only other defendant, the building owner, was responsible "predicated upon the negligence of its independent contractor, Otis Elevator Company." *Id.* at 686. Here, there are other entities whose alleged and potential negligence in manufacturing and installing the elevator cannot be attributed to Amtech.

Indeed, this case is very similar to a case from the Kansas Supreme Court that we find persuasive. In *Bias v. Montgomery Elevator Co. of Kansas, Inc.,* 216 Kan. 341, 532 P.2d 1053 (1975), the plaintiff was injured when the elevator in which he was riding fell unexpectedly. *Id.* at 1055. The plaintiff sued Montgomery Elevator Company, who was responsible for the maintenance of the elevator under an exclusive contract with the building owner. *Id.* The elevator had been manufactured and installed by Otis Elevator Company. *Id.* At trial, the plaintiff attempted to rely on the doctrine of *res ipsa loquitur,* which the trial court found to be inapplicable. *Id.* The appeals court agreed, stating:

> [I]n order to establish exclusive control it is not necessary for the plaintiff to eliminate all other possible causes of the accident. All that is required is that the plaintiff produce sufficient evidence from which a reasonable man could say that on the whole it was more likely than not there was negligence on the part of the defendant. If the evidence establishes that it was at least equally probable the negligence was that of another, the court should refuse to submit to the jury the negligence of the defendant on the theory of res ipsa loquitur.

*Id.* at 1056 (citing PROSSER ON TORTS, 4th ed., § 39, p. 211). The court concluded that because the "defendant company had no control over any design defects, mistakes in installation, or any possible faulty construction of the elevator shaft" and that because "[t]hese are all possible causes of the accident which would not have been subject to the control of the defendant[,]" the plaintiff could not rely on the doctrine of *res ipsa loquitur.* *Id.* at 1057–58.

The same is true here. Sanders seeks to apply *res ipsa loquitur* against Amtech, but Amtech was only responsible for inspecting and maintaining the elevator. Other entities manufactured and installed the elevator, and there is no evidence that the elevator's failure was more likely than not caused by negligent maintenance. Because Sanders produced "no evidence which would indicate it is probable the accident was caused by negligent servicing rather than by negligent manufacturing or installation," *res ipsa loqutur* cannot be applied in this case. *See Bias,* 532 P.2d at 1058.

Because *res ipsa loquitur* is not applicable, and Sanders presented no other summary judgment evidence showing that Amtech sufficiently controlled the elevator, the trial court properly granted Amtech's no-evidence motion for summary judgment.

Accordingly, we overrule Sanders's issues on appeal.

## CONCLUSION

We affirm the trial court's judgment.

Justice Higley, dissenting.

Laura Carter Higley, Justice, dissenting

I disagree with the majority's application of *res ipsa loquitur* law. Accordingly, I respectfully dissent.

## Background

On August 16, 2010, Sanders was in a building with an elevator maintained by Amtech. Sanders entered the elevator on the second or third floor. Sanders alleges that the elevator fell to a few feet below the first floor. He was taken to the hospital and claims he was injured as a result of the fall.

Sanders filed suit in 2012, alleging negligence. Later, Amtech filed a no-evidence motion for summary judgment, identifying three elements of Sanders's negligence claim that it asserted Sanders had no evidence to support: (1) that Amtech owed any duty to Sanders, (2) that Amtech breached any duty, and (3) that Sanders suffered any injury as a result of any breach. In his response to the motion, Sanders asserted that the doctrine of *res ipsa loquitur* applied to establish the breach element. In its reply, Amtech argued that Sanders did not meet the requirements for *res ipsa loquitur* to apply. After a hearing, the trial court granted the motion.

## No–Evidence Motion for Summary Judgment

In his two issues, Sanders argues that the trial court erred by granting summary judgment on his negligence claim against Amtech.

### A. Standard of Review

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.–Houston [1st Dist.] 1999, no pet.). The burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant the motion unless the non-movant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Flameout Design*, 994 S.W.2d at 834; *see also Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997) (holding "[m]ore than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions" (internal quotations omitted)).

To determine whether there is a fact issue in a motion for summary judgment, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005)). We indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002).

### B. Analysis

Sanders asserted a negligence claim against Amtech based on injuries he alleges to have sustained from the elevator falling one to two stories. The elements for negligence are (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach was a proximate cause of the plaintiff's injury. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex.2002). It is undisputed that there is evidence in the record showing that Sanders was an invitee to the

building in question, that the elevator was maintained by Amtech, and that Sanders was hospitalized for some period of time after he was removed from the elevator. By contracting to repair the elevators, Amtech had a duty to maintain the elevators in a reasonably safe condition for use. *Fox v. Dall. Hotel Co.*, 111 Tex. 461, 240 S.W. 517, 520 (1922), *overruled on other grounds by Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex.1981); *Requena v. Otis Elevator Co.*, 305 S.W.3d 156, 163 (Tex. App.–Houston [1st Dist.] 2009, no pet.). Accordingly, the only element in dispute between the parties in the motion for summary judgment was whether Amtech breached the duty owed to Sanders.

In response to Amtech's no-evidence motion for summary judgment, Sanders asserted that it could satisfy the breach element based on the legal principle of *res ipsa loquitur*. *Res ipsa loquitur*, a Latin phrase meaning "the thing speaks for itself," is a rule of evidence permitting a fact-finder to infer negligence "where it appears that the character of the accident is such that it would not ordinarily occur in the absence of negligence and the evidence shows that the instrumentality causing the injury was under the management and control of the defendant."[1] *Goodpasture, Inc. v. Hosch*, 568 S.W.2d 662, 664 (Tex. Civ.App.–Houston [1st Dist.] 1978, writ dism'd) (citing *Owen v. Brown*, 447 S.W.2d 883, 886 (Tex.1969)). It is not a separate cause of action. *Jones v. Tarrant Cty. Util. Co.*, 638 S.W.2d 862, 865 (Tex.1982). "The purpose of *res ipsa* is to relieve the plaintiff of the burden of proving *a specific act of negligence* by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident." *Id.* (emphasis added).

A plaintiff seeking to apply *res ipsa loquitur* must establish that "(1) the character of the accident is such that it would not ordinarily occur in the absence of negligence and (2) the instrumentality causing the injury [was] under the management and control of the defendant." *Id.* at 865. "The first factor is necessary to support the inference of negligence and the second factor is necessary to support the inference that the defendant was the negligent party." *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 251 (Tex.1974).

It is undisputed by the parties that "Amtech inspected and repaired the elevator [in question] prior to the accident as part of its routine maintenance." The summary judgment evidence shows that Amtech responded to service calls and performed routine maintenance. Amtech's records show that, in the months prior to Sanders's incident, the elevator in question had received service multiple times for trapping people in the elevator. At least one time prior to the incident, the elevator

---

1. Amtech argues on appeal that Sanders cannot prevail on a *res ipsa loquitur* theory of recovery because it is not included in his live pleading. If a plaintiff's petition "gives fair notice that he is not relying solely on specific acts but instead intends to also rely on any other negligent acts reasonably inferable from the circumstances of the accident, his pleading is sufficient to invoke the *res ipsa* doctrine." *Tex. Pipe Bending Co. v. Gibbs*, 580 S.W.2d 41, 45 (Tex.Civ.App.–Houston [1st Dist.] 1979), *writ refused n.r.e.*, 584 S.W.2d 702 (Tex.1979). Here, Sanders did not plead any specific acts of negligence. Moreover, Amtech did not file any special exceptions to Sanders's petition or challenge Sanders's reliance on the doctrine in its reply to its motion. *See* Tex. R. Civ. P. 90; *Moore v. Altra Energy Techs., Inc.*, 321 S.W.3d 727, 734 (Tex.App.–Houston [14th Dist.] 2010, pet. denied) (holding party's unpleaded issues are deemed tried by consent when both parties understood issues were developed and no objections were raised). Accordingly, this argument cannot prevail.

opened partially below the first floor. On at least one other occasion, paramedics were called after a person was retrieved from a stuck elevator. Records showed that Amtech investigated the mechanical and electrical problems that could have caused these malfunctions and performed the work attempting to fix the problems. Such repairs included replacing electrical parts and performing mechanical adjustments.

For the first element, Amtech argued in the trial court and argues on appeal that Sanders failed to establish that the accident was a kind that would not ordinarily occur without negligence. *See Jones*, 638 S.W.2d at 865. It is long established, however, that an "elevator's going into a free fall and injuring the petitioner [is] such an accident which does not ordinarily occur without negligence, and is such an accident, that from the mere showing that it happened, negligence of those in control may be inferred." *Bond v. Otis Elevator Co.*, 388 S.W.2d 681, 684 (Tex.1965). In its reply to the motion, Amtech argued that *Bond* is "a scientifically outdated opinion." It argues that advances in technology, discovery rules, and scientific techniques eliminate the justification to put any onus on the defendant to show how the accident occurred. While Amtech provides little support for these broad assertions, to the degree Amtech is asking this Court to overrule precedent from the Supreme Court of Texas, we cannot. *See Lubbock Cty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex.2002) (requiring intermediate appellate courts to follow supreme court precedent and leave to the supreme court the matter of abrogating or modifying its own precedent).

Amtech also argues that Sanders failed to carry its burden by not excluding other possible explanations beyond negligence. The intermediate appellate court case from

Washington that Amtech relies on for support is not applicable. *See Adams v. W. Host, Inc.*, 55 Wash.App. 601, 779 P.2d 281 (1989). *In Adams*, the plaintiff sustained injuries from the elevator stopping one to two-and-a-half feet above the designated floor. *Id.* at 282. The defendant filed a traditional motion for summary judgment and "provided substantial evidence of the cause of the misleveling and that it could occur without negligence on the part of" the defendant. *Id.* at 284. The plaintiff did not present any contrary rebuttal evidence. *Id.* Accordingly, the court upheld the trial court's grant of summary judgment. *Id.*

Here, there is no evidence of the actual mechanical or electrical failure causing the elevator to fall. Necessarily, then, there was no evidence—let alone substantial evidence—that the elevator going into free fall was the result of anything other than negligence. The fact that an elevator goes into free fall allows the negligence of those involved to be inferred. *Bond*, 388 S.W.2d at 684.

Amtech further argues that Sanders failed to include expert testimony establishing that the accident would not normally occur without negligence. It claims, "Texas courts have commonly required expert testimony in *res ipsa loquitur* cases." In fact, the opposite is true. "In a great many cases the plaintiff can rely upon general knowledge to prove the accident in question is the type of accident which does not ordinarily happen in the absence of negligence." *Mobil Chem.*, 517 S.W.2d at 252. However, if necessary, expert testimony is admissible. *Id.* An elevator going into free fall does not require an expert to establish it does not typically happen without the negligence of the defendant. *See Bond*, 388 S.W.2d at 684 (holding elevator's going into free fall does not ordinarily

occur without negligence of defendant owner and maintenance provider).

For the second element, Amtech argues that Sanders failed to establish that the instrumentality causing the injury was under its management and control. *See Jones*, 638 S.W.2d at 865. As Amtech points out, case law establishes that the evidence must show that the instrumentality causing the injury was under the defendant's *exclusive* management and control. *Esco Oil & Gas, Inc. v. Sooner Pipe & Supply Corp.*, 962 S.W.2d 193, 195 (Tex. App.–Houston [1st Dist.] 1998, pet. denied). Amtech claims that the evidence establishes that the elevator was not under its exclusive management and control. Most of Amtech's arguments, however, are based on misconstructions of the law.

First, it is not the elevator as a whole that constitutes the "instrumentality" claimed to be under Amtech's control. Instead, it is the mechanical and electrical components that failed that constitute the instrumentality under Amtech's control. In *Birmingham*, the operator of a crane was killed when the crane fell during its use. *Birmingham v. Gulf Oil Corp.*, 516 S.W.2d 914, 916 (Tex.1974). "The fall of the crane was due to a failure of bolts which held it on a mount or pedestal sitting on the drilling platform." *Id.* The crane, owned by Gulf, had been on the drilling platform for about 10 years. *Id.* "[N]o inspection or precaution had been taken for the maintenance or replacement of the bolts . . . ," *Id.* Another company was in charge of maintenance of the crane, but its "personnel only checked the operation of the moving parts of the crane." *Id.* The Supreme Court of Texas held, "Cranes weighing seven tons do not usually tear loose from their bases without someone being at fault." *Id.* at 917. In its analysis, the court considered the intermediate court's ruling that Gulf was not in

exclusive control because the crane was being operated by the plaintiff at the time. *Id.* at 918. Rejecting this ruling, the court held that "a distinction should be made between control over the movement of the machine and responsibility for the particular instrumentality which caused the accident." *Id.* It was the failure of the bolts that caused the accident, not the operation of the moving parts of the crane. *See id.* at 916. Accordingly, the instrumentality causing the accident (that is, the bolts) were never under the control of the plaintiff. *See id.* at 918.

The court likened this scenario to a passenger in an elevator. "The passenger in an elevator or the one at its controls does not become responsible for the mechanism for the elevator." *Id.* Accordingly, Amtech's claim that all manner of people had access to the elevator has no legal significance. The evidence in the record identifies Amtech as the only party with management and control of the mechanical and electrical portions of the elevator that would cause the elevator to free fall.

For this reason, Amtech's reliance on *Trejo* also fails. *See Trejo v. Laredo Nat'l Bank*, 185 S.W.3d 43 (Tex.App.–San Antonio 2005, no pet.). In *Trejo*, the plaintiff was injured when she reached for the canister at the bank drive-through and the automatic sliding door closed on her hand. *Id.* at 45. The San Antonio Court of Appeals rejected the application of *res ipsa loquitur* because the plaintiff failed to establish that the sliding door was under the bank's exclusive control. *Id.* at 48. The court reasoned that the sliding door was in a public area, easily accessible to the public, and could have been meddled with by any member of the public. *Id.* (citing *Lucas v. Titus Cty. Hosp. Dist.*, 964 S.W.2d 144, 157 (Tex.App.–Texarkana 1998, pet. denied) (holding *res ipsa loquitur* not applicable to injury from breaking of chair

kept in public area that could have been broken previously by another member of public)). Even assuming *Trejo* was correctly decided, it is distinguishable from the present case because there is no suggestion in the record that the mechanical or electrical portions of the elevator responsible for the free fall were accessible by the public.

Next, Amtech claims it did not have exclusive control of the mechanisms for the elevator because Harris County owned the building in question, including the elevators. Here, Amtech misconceives what is meant by "exclusive" control. "The doctrine of *res ipsa loquitur* is not available to fix responsibility when any one of multiple defendants, *wholly independent of each other*, might have been responsible for the injury." *Esco Oil & Gas*, 962 S.W.2d at 195 (emphasis added). In contrast, multiple defendants having "joint control of the instrumentality causing the injury" does not defeat the doctrine's application. *Id.*; *see also Bond*, 388 S.W.2d at 685 (holding "exclusive control" does not mean liability must be limited to a single entity; joint control is sufficient).

The evidence presented by Sanders shows that Amtech was the only entity that maintained the elevator. Amtech investigated and fixed previous problems

with the elevator, including people being trapped inside and the elevator opening below the designated floor. The documents from Harris County concerning Sanders's fall show that the only action that Harris County took concerning the mechanical and electrical components of the elevator was to call Amtech to investigate the incident and repair the elevator. The record does not establish, then, that Harris County and Amtech had separate and independent control over the mechanical and electrical components of the elevator. Viewing the record in the light most favorable to Sanders, Amtech had at least joint control over the mechanical and electrical components of the elevator.[2] Accordingly, for the purposes of applying *res ipsa loquitur*, Amtech had exclusive control of the instrumentality causing the injury. *See Jones*, 638 S.W.2d at 865.

I would hold that Sanders presented sufficient summary judgment evidence to apply the *res ipsa loquitur* doctrine to the case.[3] Accordingly, I would sustain Appellant's two issues.

## C. Response to Majority

The majority argues that the second element has not been met "because other potential defendants in the case also had

**2.** Amtech argues Sanders was required to proffer the contract between Amtech and Harris County in order to apply *res ipsa loquitur*. For support, Amtech relies on *Mendiola v. Dover Elevator Co.*, No. 04–00–00347–CV, 2001 WL 518982 (Tex.App.–San Antonio May 16, 2001, no pet.) (mem.op.). *Mendiola* does not stand for the proposition that Amtech claims. *See id.* at *2 (holding second element of *res ipsa loquitur* met by party admission that it was under contract to repair elevator). In addition, the record here contains far more than an admission by Amtech that it had a service and maintenance contract on the elevator. The record shows the types of repairs that Amtech was called to make in the past, and the scope of those repairs shows Amtech

had exclusive control and management over the mechanical and electrical components of the elevator. The record also shows that Harris County relied on Amtech to investigate and repair the elevator after the incident in question. Accordingly, *Mendiola* does not apply to this case.

**3.** In its brief on appeal, Amtech argues that the summary judgment evidence also rebuts the *res ipsa loquitur* inference because the records show that the elevator had not fallen previously. I find no support for Amtech's suggestion that a party can only be negligent the second time its negligence causes an injury.

control over the elevator and its components." The majority reasons this is true because, "in its Original Petition, [Sanders] asserted that the elevator was negligently 'manufactured, installed, inspected, and maintained,' not merely the negligent maintenance and inspection that Sanders now attributes to Amtech." There are a number of flaws with this reasoning.

First, the majority misconstrues the requirements for proving exclusive control. Sanders sued three defendants[4]: Harris County, Amtech, and Otis Elevator (the elevator's manufacturer). The majority recognizes that, by the time of summary judgment against Amtech, the claims against Harris County and Otis Elevator "were disposed of and are not a part of this appeal." Yet, despite Otis Elevator no longer being a party to the suit, the majority concludes that, because Sanders once named it as a defendant, this alone proves that Sanders cannot assert application of res ipsa loquitur. There is simply no legal support for this position.

The majority attempts to rely on *Sterner* for proof that including another defendant to the suit disproves *res ipsa loquitur*. *See Marathon Oil Co. v. Sterner*, 632 S.W.2d 571 (Tex.1982). In *Sterner*, the plaintiff sued to recover damages for injuries resulting from his exposure to an unidentified gas. *Id.* at 571. He had been working on a sealed tower used to process different gasses, "sealing it after it had been cleaned and repaired." *Id.* at 572.

While working, he noticed a sour, rotten smell and became ill. *Id.* at 572–73.

The court held that the plaintiff failed to show that the sealed tower was in the exclusive control of the defendant. *Id.* at 573–74. The plaintiff was in the tower "after it had been cleaned and repaired by [employees of another company] when he encountered the gaseous substance." *Id.* at 574. The other company had performed repairs on the tower for a week before the defendant did the sealing work. *Id.* "Therefore it is at least as probable that the negligence, if any, can be attributed to [an employee of the other company] working in the vessel during the previous week." *Id.*

*Sterner* stands for the proposition that *proof* of non-exclusive control of the instrumentality defeats a *res ipsa loquitur* claim, not that having once named a defendant no longer a party to the dispute by itself defeats *res ipsa loquitur*. *See id.* The majority's reliance on *Sterner* is misplaced.

Second, the majority's reliance on an opinion from another jurisdiction is misplaced. In *Bias*, the court held that *res ipsa loquitur* did not apply because "the evidence *disclose[d]* there were other equally possible causes of the accident in addition to the possibility of defendant's negligence." *Bias v. Montgomery Elevator Co. of Kan., Inc.*, 216 Kan. 341, 532 P.2d 1053, 1057 (1975) (emphasis added). The court did not simply rely on the existence of a manufacturer as proof that *res ipsa loquitur* could not apply. Instead,

4. The majority claims that "Sanders sued at least three other defendants in this suit." However, Sanders's only petition identified five defendants: Harris County, "ABM Amtech Incorporated," "Amtech Reliable Elevator Company," "NAES Central, Inc.," and Otis Elevator Company. When Amtech answered, it identified itself as "NAES Central, Inc. d/b/a Amtech Elevator Services (incorrectly sued as 'ABM Amtech Incorporated'

and 'Amtech Reliable Elevantor Company')." The record shows that the parties thereafter treated "ABM Amtech Incorporated," "Amtech Reliable Elevator Company," and "NAES Central, Inc.," as Amtech. The majority appears to recognize that these are not actually other defendants to the suit by conceding they are "arguably misnamed defendants." No one at trial or on appeal has suggested otherwise.

the evidence at trial showed that there was nothing mechanically wrong with the elevators. *Id.* at 1055. Although there was nothing mechanically wrong with the elevators—the mechanisms over which the defendant had control—the safety switches designed to cause the elevator to stop automatically if it moves too fast were tripped. *Id.* The court held that, because the evidence *disclosed* other possible causes, the plaintiff could not prevail on a *res ipsa loquitur* theory of liability. *Id.* at 1057.

Even if *Bias* stands for the proposition that a plaintiff seeking to rely on *res ipsa loquitur* must first disprove design or installation defects, this is not the law in Texas. The majority cannot seek to overrule the Supreme Court of Texas by relying on precedent from another state.[5] *See Trammel's Lubbock Bail Bonds,* 80 S.W.3d at 585 (requiring intermediate appellate courts to follow supreme court precedent and leave to the supreme court the matter of abrogating or modifying its own precedent). "[T]he 'control' requirement is not a rigid rule that the instrumentality must have always been in the defendant's possession or even that it must have been in the defendant's control at the time of the injury." *Bell,* 517 S.W.2d at 251. Instead, the second element is established "if the defendant was in control at the time [of the alleged negligence], so that the *reasonable probabilities* point to the defendant and support a *reasonable inference* that he was the negligent party." *Id.* (emphasis added). The evidence need only "warrant

the inference of negligence," not "compel such an inference." *Id.* (citing *Sweeney v. Erving,* 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815 (1913)).

In *Bell,* the plaintiffs suffered injury following an explosion at the defendant's chemical plant. *Id.* at 248. The operational part of the plant had only recently been constructed and turned over to the defendant. *Id.* at 249–50. The defendant even presented evidence that the explosion was due to defective manufacturing. *Id.* at 253. The court held, nevertheless, that there was evidence that the defendant had exclusive control. *Id.* The Supreme Court of Texas held that, "[w]hile the jury was certainly entitled to believe this explanation, it was not compelled to." *Id.* at 254. If evidence from the defendant that the cause of the injury was a design defect does not disprove *res ipsa loquitur,* then the mere existence of a manufacturer and installer cannot defeat it. *See id.* at 253–54.

Third, it is important to emphasize that the majority is affirming the trial court's ruling on a ground *that no one argued at trial or on appeal.* No party argued that the existence of Otis Elevator Company as a party to the suit defeats the application of *res ipsa loquitur.* Amtech did not object to Sanders's evidence on this ground. It did not present evidence on this supposed theory. And, on appeal, it has neither suggested nor supported with legal authority that this would be an appropriate ground for affirming the trial court's grant

5. To the degree precedent from other states is necessary to resolve this issue, I note that other state supreme courts have disapproved of the interpretation of *Bias* advanced by the majority. *See Lynden Transp., Inc. v. Haragan,* 623 P.2d 789, 795 (Alaska 1981) (distinguishing *Bias;* holding, "To require a plaintiff also to show the absence of a manufacturing defect when such knowledge is more readily available to the defendant is inconsistent with the purpose of *res ipsa loquitur.*"); *Am. Elevator Co. v. Briscoe,* 93 Nev. 665, 572 P.2d 534, 537 (1977) (distinguishing *Bias;* holding, "To require a plaintiff to establish exclusive control in the defendant with respect to any possible cause of the accident before permitting the application of *res ipsa loquitur* would emasculate the doctrine.").

of summary judgment. "In an appeal from a summary judgment, issues to be reviewed by the appellate court must have been actually presented to and considered by the trial court." *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex.1992). Given that no party advanced the majority's theory for denial of the application of *res ipsa loquitur* at trial or on appeal, it is not a proper ground for affirming the trial court's judgment.

Fourth, there is no evidence that any defective manufacture or installation of the elevator caused it to fail. To the contrary, there is sufficient evidence to indicate the opposite.. The plaintiff bears the burden of establishing the applicability of *res ipsa loquitur*. *Bell*, 517 S.W.2d at 252. For the first element, "[i]n a great many cases the plaintiff can rely upon general knowledge to prove the accident in question is the type of accident which does not ordinarily happen in the absence of negligence." *Id.* An elevator falling is one of those cases. *Bond*, 388 S.W.2d at 684. For the second element, it is only necessary to show "that the *reasonable probabilities* point to the defendant and support a reasonable inference that he was the negligent party." *Bell*, 517 S.W.2d at 251 (emphasis added); *see also Porterfield v. Brinegar*, 719 S.W.2d 558, 559 (Tex.1986) ("Where the particular thing causing the injury is shown to be under the management of the defendant, or his servants, and [the first element is met], it affords reasonable inference, in the absence of explanation, that the accident arose from want of care."); *Sterner*, 632 S.W.2d at 574 ("It is sufficient that the defendant be in control of the instrumentality at the time that the negligence inferable from the accident probably occurred.").

**6.** *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002) (holding appellate courts reviewing ruling on summary judgment must

In *Bell*, the chemical plant had been constructed, and the defendant had taken control of the chemical plant only about two weeks prior to the explosion. 517 S.W.2d at 253. Nevertheless, the Supreme Court of Texas concluded that the defendant had been in control of the plant because it had performed tests before taking control of the plant "and had been performing additional tests and maintenance" during those two weeks. *Id.* Based on this evidence, the court held, "[I]t is reasonable to infer that if negligence was involved, [the defendant] was the negligent party." *Id.*

Here, the exact date of installation of the elevator is not in the record. But Sanders's summary judgment evidence establishes that the elevator had been installed and operational for at least eight months prior to Sanders's incident. Even assuming that the elevators had been installed immediately before the eight months of operation known from the record—which is an impermissible inference in this situation [6]—eight months of use and repair is far longer than the length of time that control was exercised in *Bell*, which supports an inference that any negligence was committed by Amtech. *See id.* For this reason, the majority's conclusion that "there is no evidence that the elevator's failure was more likely than not caused by negligent maintenance" cannot stand.

### Conclusion

I would reverse the trial court's judgment granting Amtech's motion for summary judgment and remand for further proceedings.

indulge every reasonable inference and resolve any doubts in the non-movant's favor).