**Opinion issued August 24, 2023**



In The

# Court of Appeals

For The

## First District of Texas

———————————

**NO. 01-21-00634-CV**

———————————

**FOLUSHO K. PETERS, Appellant**

**V.**

**VOLKSWAGEN GROUP OF AMERICA, INC. D/B/A AUDI OF AMERICA, INC., & SEWELL CORPORATION D/B/A SEWELL AUDI NORTH HOUSTON, Appellees**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-91383**

---

## MEMORANDUM OPINION

In this personal injury case, appellant Folusho K. Peters appeals the trial court's order granting summary judgment in favor of appellees Volkswagen Group of America, Inc. d/b/a Audi of America, Inc. (VWGoA) and Sewell Corporation

d/b/a Sewell Audi North Houston (Sewell) on Peters's claims for strict product liability (design, manufacturing, and marketing defects), negligence, breach of express and implied warranties, and Deceptive Trade Practices Act violations. TEX. BUS. & COM. CODE §§ 17.41–17.63 (DTPA). In four issues, Peters contends that the trial court erred in (1) denying her motion to compel VWGoA to produce relevant design, manufacturing, and testing documents; (2) declining to apply the doctrine of res ipsa loquitur; (3) granting summary judgment in favor of VWGoA and Sewell on her DTPA claims; and (4) and granting summary judmgent in favor of VWGoA and Sewell on her breach of warranty claims. We affirm.

## Background

Peters purchased a certified, pre-owned 2014 Audi A8 Quattro (the vehicle) from Sewell in June 2017. Prior to Peters's purchase, Auto Glass Installers (Auto Glass) replaced the vehicle's windshield in March 2017 at the request of its previous owners. The replacement required the removal and reinstallation of the vehicle's rearview mirror.

On November 7, 2017, Peters was driving to work on I-45 North in Houston when she swerved to avoid hitting the car in front of her, lost control of the vehicle, and struck a concrete guardrail. Upon impact, the vehicle's rearview mirror detached from the windshield and struck her in the face, injuring her.

Peters sued VWGoA and Sewell, asserting claims for strict product liability (design, manufacturing, and marketing defects), negligence, breach of express and implied warranties, DTPA violations, and gross negligence. Peters further alleged that the doctrine of res ipsa loquitur should be applied to her causes of action. Peters sought actual and punitive damages and attorney's fees. Peters filed her second amended petition—the live pleading in this case—on August 31, 2020.

Sewell answered asserting a general denial and affirmative defenses. VWGoA filed special exceptions, an "objection to blanket document designation," and its original answer asserting a general denial and affirmative defenses. Appellees subsequently amended their answers. Appellees later filed a motion to designate Auto Glass as a responsible third party, and the trial court granted the motion.

In her third request for production of documents to VWGoA and Sewell, Peters sought, among other things, documents related to the design, manufacture, and marketing of the vehicle and its components, including the rearview mirror. In its responses to some of Peters's individual discovery requests, VWGoA stated that it "has not and does not design, develop, manufacture, or test Audi automobiles or rearview mirrors" and that "VWGoA is not in possession, custody or control" of the requested materials. In the preliminary statement to its supplemental discovery responses, VWGoA stated:

VWGoA is the sole, authorized United States importer and marketer of Audi vehicles. VWGoA has not and does not design, develop, manufacture or test Audi automobiles or the review mirrors or front windshields installed in Audi automobiles. More specifically, VWGoA did not design, develop, manufacture or test the model year 2014 Audi A8 Quattro bearing VIN WAURGAFD6EN011241 ("Subject Vehicle") which is the subject of this lawsuit, or the rear view mirror or front windshield contained in the Subject Vehicle. Upon information and belief, the Subject Vehicle was manufactured by Audi AG ("Audi"), Ingolstadt, Federal Republic of Germany.

Peters moved to compel VWGoA to produce documents related to the design and manufacture of the vehicle and its components, including the rearview mirror, urging that the relevant documents were within VWGoA's possession, custody, or control or that VWGoA had the right, authority, or ability to obtain the documents from its non-party parent, Volkswagen Aktiengesellschaft (VWAG). The trial court conducted a hearing on Peters's motion to compel on June 9, 2021, but it ultimately continued the matter to allow Peters the opportunity to supplement her motion with additional documents explaining the relationship between VWGoA, VWAG, and Audi AG. Peters supplemented her motion to compel on August 19, 2021.

While the motion to compel was pending, appellees moved for traditional summary judgment as to all of Peters's claims on the grounds that the replacement

4

of the windshield by Auto Glass was the sole proximate cause of Peters's injuries.[1]

Appellees also argued that Peters had presented no evidence to support her strict product liability, negligence, or warranty claims. Appellees further argued that Peters could not meet the elements necessary to recover under the DTPA and that res ipsa loquitur did not apply in the present case.

The trial court held a hearing on the summary judgment motion on August 25, 2021 and ultimately granted the motion in its entirety on August 31, 2021. Peters appeals.

## Motion to Compel

In her first issue, Peters contends that the trial court erred in denying her motion to compel VWGoA to produce certain design, marketing, and manufacturing documents relating to the vehicle. In response, VWGoA argues that the trial court never ruled on the motion and thus no error was preserved for our review.

### A. Lack of Ruling on Discovery Motion

In reviewing the record, we agree with VWGoA that the trial court never ruled on the motion to compel. In fact, following arguments from both parties at

---

[1] Appellees also moved for summary judgment on Peters's seatbelt and airbag claims and claims for gross negligence, but Peters later acknowledged that she was no longer pursuing these claims.

the motion to compel hearing, the trial court specifically deferred ruling on the motion to give Peters an opportunity to supplement:

> I'm just going to ask that you supplement and I'll just go ahead and – and reset – reset this hearing until I give you time to supplement to see if you can provide further information – if – further briefing and any other additional evidence you'd like to provide based on what has been presented today.

More specifically, the trial court urged Peters to

> supplement [what's in] your record with some of the things that actually describe the relationship whether that's through a corporate rep or importer agreement or these other things that you talk about or sort of lend the idea that, you know, that they do – obviously access is not enough and, you know, I think opposing counsel doesn't – doesn't necessarily agree with this relationship idea. But you can also supplement the record on that as well, provide additional briefing[.]

Ultimately, the trial court concluded the motion to compel hearing with the following:

> Well, I'm basically just continuing this hearing until such time as renoticed by hearing, oral hearing, or submission which I hope will provide some more supplemental evidence because I do think it's – while I understand [Peters's counsel's] frustration, I do think he has the burden of proof and while he's tried to address it, it may not be sufficient at least at this point and it may be helpful to see if he can further supplement if he intends to pursue this seriously.

At the subsequent summary judgment hearing on August 25, 2021, the trial court again deferred ruling on the motion to compel. Peters's counsel confirmed there would be no ruling in the following exchange:

> [Counsel for Peters]:    Your Honor, so, on the Motion to Compel, should we just leave it be just to see what

you're going to decide on [the summary judgment motion] before we set a hearing to continue the Motion to Compel?

THE COURT:          Yes, sir.

Contrary to Peters's arguments, nothing about the foregoing indicates that the trial court ruled on the motion to compel. Instead, the trial court continued the hearing to allow Peters time to supplement her motion with additional case law and documents supporting her contention that VWGoA could be compelled to produce documents maintained by VWAG. Further, Peters's supplement to the motion, filed on August 19, 2021, acknowledges that "[a]t the conclusion of the May 24, 2021[2] hearing on Plaintiff's Motion to Compel production of key documents relating to the rearview mirror that injured Plaintiff in a single car crash, the Court asked Plaintiff to supplement her Motion with additional support." Peters's supplement does not suggest that the trial court made any final ruling at the hearing. It was only *after* the trial court ruled against Peters on summary judgment that she took the position that the motion to compel had been denied.

## B.    Analysis

To preserve error on a discovery dispute, an appellant must obtain a ruling from the trial court on the discovery matter. *U. Lawrence Boze' & Assocs., P.C. v. Harris Cnty. Appraisal Dist.*, 368 S.W.3d 17, 32 (Tex. App.—Houston [1st Dist.]

---

[2]    The record reflects that the hearing was held on June 9, 2021, not May 24, 2021.

7

2011, no pet.) (citing *Goodchild v. Bombardier-Rotax GMBH Motorenfabrik*, 979 S.W.2d 1, 6–7 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ("The statement of facts from the hearing indicates appellants raised their complaints [regarding a motion to compel interrogatories and a response to a motion for production] at the hearing, but they did not obtain a ruling from the trial court on the motion and they did not object to the trial court's failure to make such a ruling.")). This comports with Texas Rule of Appellate Procedure 33.1(a), which requires, to preserve error: (1) a complaint to the trial court by timely request, objection, or motion, stating the grounds for ruling with sufficient specificity to make the trial court aware of the complaint; and (2) a ruling on the request, objection, or motion. TEX. R. APP. P. 33.1(a).

Here, Peters never secured a ruling on her motion to compel. In fact, her counsel expressly confirmed with the trial court at the summary judgment hearing that a decision on the motion to compel would be postponed until *after* the summary judgment ruling. The record does not reflect that Peters ever attempted to reset the motion to compel for hearing or otherwise bring it to the court's attention following the summary judgment hearing.

Several of our sister courts have held that failure to obtain a ruling on a motion to compel discovery prior to a ruling on summary judgment waives any error pertaining to the discovery issue. For example, in *Gupta v. Midland Funding*

*LLC*, No. 04-13-00227-CV, 2014 WL 3611517 (Tex. App.—San Antonio July 23, 2014, no pet.) (mem. op.), the appellant argued that the trial court erred in granting summary judgment before ruling on her pending motion to compel further discovery. *See id.* at *1. The San Antonio Court of Appeals determined that the appellant failed to preserve her complaint for review because she did not attempt to set her discovery motion for hearing or otherwise obtain a ruling from the trial court before it ruled on summary judgment. *Id.* The court also noted that during the summary judgment hearing, the appellant "did not make any reference to a pending motion for continuance [of the summary judgment hearing], and the trial court did not rule on either a motion to compel or a motion for continuance." *Id.*

Likewise, in *Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75 (Tex. App.—Texarkana 2008, no pet.), the Texarkana Court of Appeals held that "the failure 'to obtain a pre-trial ruling on any discovery dispute existing before commencement of summary judgment proceedings constitutes a waiver' of any claim for relief." *Id.* at 84 (quoting *White v. Cole*, 880 S.W.2d 292, 296 (Tex. App.—Beaumont 1994, writ denied)). In *Corona*, the appellant filed a motion to compel discovery but did not endeavor to request a hearing or obtain a ruling on the motion from the trial court prior to the summary judgment hearing. *Id.* At the summary judgment hearing, the appellant complained about the opposing party's failure to respond to his

9

outstanding discovery requests, but again did not request a ruling on the discovery motion or a continuance. *Id.*

Here, considering the transcripts of the hearings on the motion to compel and the summary judgment motion, and determining that the trial court never ruled on the discovery motion, we hold that Peters has failed to preserve her complaint regarding the discovery dispute for our review. *See* TEX. R. APP. P. 33.1(a); *Gupta*, 2014 WL 3611517, at *1; *Corona*, 245 S.W.3d at 84.

Further, we disagree with Peters that the trial court's October 30, 2021 order denying her "Motion for New Trial & Request for Reconsideration of the Court's Discovery Ruling" somehow preserved the issue for our review. While the motion presupposed that the trial court had previously denied the motion to compel, nothing about the October 30, 2021 order substantiates this assumption. Rather, the four-line order summarily denied Peters's motion without any findings of fact or conclusions of law. The order is silent as to whether the trial court ever ruled on the motion. *See Melawer v. Total Aircraft Servs., Inc.*, No. 01-11-00606-CV, 2013 WL 485770, at *5 (Tex. App.—Houston [1st Dist.] Feb. 7, 2013, no pet.) (mem. op.) (finding waiver and holding that "[a] postjudgment motion is not a timely objection to the lack of a necessary finding of fact on which evidence is required" where appellant failed to obtain ruling from trial court on statute of limitations

10

defense until denial of motion for new trial) (citing *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999)).

We overrule Peters's first issue.

## Motion for Summary Judgment

Peters's remaining issues on appeal concern the trial court's grant of final summary judgment. While not entirely clear from her briefing, we presume Peters challenges the grant of summary judgment as to the following claims: (1) manufacturing defect, (2) design defect[3], (3) marketing defect, (4) negligence, (5) violations of the DTPA, and (6) breach of express and implied warranties.[4]

---

[3]    Appellees contend that Peters has not challenged the grant of summary judgment as to her design and manufacturing defect claims. Construing Peters's briefing liberally, as we must, portions of her brief discussing res ipsa loquitur do concern its application in the product liability context. Thus, we interpret this as a challenge to the trial court's grant of summary judgment on those claims. *See Baumgart v. Archer*, 581 S.W.3d 819, 827 n.5 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (citing TEX. R. APP. P. 38.9; TEX. R. APP. P. 38.1; *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) ("[I]t is our practice to construe liberally points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants.")).

[4]    Appellees argue that we can affirm summary judgment as to all claims without reaching the merits of the motion because Peters has failed to challenge the traditional summary judgment grounds: that Auto Glass was the sole proximate cause of Peters's injuries. We do not agree. While she does not specifically identify this point in her enumerated issues, Peters's brief does address the argument elsewhere, contending that appellees' conduct after Auto Glass's replacement of the windshield is a "new and independent, or superseding, cause." We therefore decline to find waiver and turn to the merits of the no-evidence summary judgment grounds.

11

## A.    Standard of Review

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The motion must state the specific grounds relied upon for summary judgment. *See* TEX. R. CIV. P. 166a(c), (i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). When reviewing a summary judgment, we must (1) take as true all evidence favorable to the nonmovant and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request under the traditional summary judgment standard. *Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004). When a party has sought summary judgment on both grounds and the order does not specify which motion was granted, we typically first review the propriety of the summary judgment under the no-evidence standard. *See* TEX. R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d

12

598, 600 (Tex. 2004); *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 65 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). If the nonmovant fails to meet its burden to adduce evidence in response to the no-evidence motion, there is no need to address the challenge to the traditional motion because it necessarily fails. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).[5]

To prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence of one or more essential elements of a claim on which the adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). To defeat a no-evidence motion, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). "More than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 376 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

---

[5] As discussed below, because we hold that Peters failed to meet her burden with respect to the no-evidence grounds for summary judgment, we do not reach the traditional summary judgment.

**B.** **Marketing Defect Claims**[6]

Regarding her marketing defect claims, Peters alleges that although the vehicle's repair manual requires replacement of a clip in the rearview mirror following any windshield replacement, Auto Glass did not replace the clip on her mirror when it replaced the windshield. She further contends that "failure to warn of the need to replace the clip is a marketing defect." Appellees moved for no-evidence summary judgment as to the marketing defect claims.

**1.** **Applicable Law**

This court has previously identified five factors necessary to establish a marketing defect claim: (1) a risk of harm, either inherent to the product or arising from its intended or foreseeable use; (2) at the time the product is marketed, the product supplier knows or reasonably should foresee the risk of harm; (3) the product has a marketing defect; (4) the failure to warn or provide instructions renders the product unreasonably dangerous to the product's ultimate user or consumer; and (5) the failure to warn or instruct causes the user's injury. *Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 480 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

---

[6] Peters does not specifically challenge the trial court's grant of summary judgment as to her marketing defect claims in her enumerated issues on appeal; however, she does address this argument in the body of her brief. *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) ("An appellant can preserve error in the body of their appellate brief, even if it is not separately listed in the notice of appeal or presented as an issue in the brief.") (internal quotations and citations omitted).

14

### 2. Analysis

Peters's marketing defect claim is predicated on the assumption that a failure to replace the clip caused the mirror to detach during the accident. But Peters has presented no evidence, from an expert or otherwise, to support this assumption. When asked why Audi recommends replacing the clip, VWGoA's corporate representative testified: "I don't know why they provide those instructions. They don't go into detail. That would be information that would need to . . . be asked from Audi AG."[7] Further, Peters's only expert, Dr. Mariusz Ziejewski, testified that he was not "involved in [the] analysis [of the clip] at all" because design was "not [his] issue."

Additionally, Peters has not established that any warnings or instructions were inadequate. She has not presented any expert testimony or opinions as to the adequacy of the vehicle's warnings. Peters acknowledges that the repair manual advises to "[a]lways replace clips -2- and -5- for the interior rearview mirror if removed." It is unclear what other instructions or warnings Peters alleges should have been provided, or where she would have appellees place additional warnings. She has likewise not demonstrated that if additional instructions or warnings were present, she would not have been injured. *See Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107, 116–18 (Tex. App.—San Antonio 2004, pet. denied)

---

[7] Peters did not name Audi AG in her lawsuit.

15

(concluding expert testimony was required to establish marketing defect where plaintiff did not offer proposed warning and failed to otherwise demonstrate that absence of warning or instruction on tire's sidewall rendered it unreasonably dangerous to ultimate user or consumer; jury could not determine without expert testimony which warnings, among many, should be printed on tire); *see also Ramsey v. Caterpillar Inc.*, No. 12-16-00155-CV, 2017 WL 1426793, at *3 (Tex. App.—Tyler Apr. 19, 2017, pet. denied) (mem. op.) (affirming grant of no-evidence summary judgment on marketing defect claim where there was no evidence of inadequate warning or that alleged failure to warn caused injuries; "In situations where instructions or warnings pertinent to the proper operation, mounting, maintenance, and repair of the product may be necessary, expert testimony is required.").

We therefore affirm the trial court's grant of summary judgment as to Peters's marketing defect claims.

## C.    DTPA Claims

In her third issue, Peters challenges the trial court's grant of summary judgment as to her DTPA claims. Appellees moved for no-evidence summary judgment as to these claims, arguing that Peters could not meet either of the two exceptions to the general rule that the DTPA does not apply to claims arising from alleged bodily injury or mental anguish.

### 1. Applicable Law

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). To prevail on her DTPA claims, Peters must prove that: (1) she is a consumer; (2) appellees can be sued under the DTPA; (3) appellees committed some wrongful act under the DTPA; and (4) appellees' conduct was a producing cause of her damages. *See Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 388 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing Tex. Bus. & Com. Code § 17.50(a); *Amstadt*, 919 S.W.2d at 649).

As appellees correctly point out, section 17.49(e) of the DTPA expressly provides that "[e]xcept as specifically provided by Subsections (b) and (h), Section 17.50, nothing in this subchapter shall apply to a cause of action for bodily injury or death or for the infliction of mental anguish." Tex. Bus. & Com. Code § 17.49(e). On appeal, Peters argues that the exception found in section 17.50(b) applies, which permits recovery of mental anguish damages if the trier of fact determines that the defendant's conduct was committed "knowingly" or "intentionally." *Id.* § 17.50(b)(1).[8]

---

[8] Peters does not argue on appeal that the section 17.50(h) exception applies. *See* Tex. Bus. & Com. Code § 17.50(h).

17

## 2. Analysis

Under the DTPA, "knowingly" means "actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim . . . but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." *Id.* § 17.45(9). However, "[a]ctual awareness does not mean merely that a person knows what he is doing." *Daugherty v. Jacobs*, 187 S.W.3d 607, 618 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Instead, "it means that a person knows what he is doing is false, deceptive, or unfair." *Id.* Stated differently, "a person must think to himself at some point, 'Yes, I know this is false, deceptive, or unfair to him, but I'm going to do it anyway.'" *St. Paul Surplus Lines Ins. Co., Inc. v. Dal-Worth Tank Co., Inc.*, 974 S.W.2d 51, 54 (Tex. 1998). Actual awareness goes beyond conscious indifference to the welfare or rights of another. *Daugherty*, 187 S.W.3d at 618.

Appellees contend that Peters presented no evidence that they had actual awareness of any problems with the vehicle or its components at the time of its sale to Peters. In support of their argument, appellees direct us to *Prudential Insurance Co. of America v. Jefferson Associates, Ltd.*, 896 S.W.2d 156 (Tex. 1995). In that case, the plaintiff sued the seller of a commercial building pursuant to the DTPA after learning that the building contained asbestos. *See id.* at 159. Though the

18

plaintiff agreed to purchase the building "as is," the jury found for the plaintiff, and the court of appeals affirmed. *Id.* at 160. In reversing the court of appeals and rendering judgment in favor of the seller, the Texas Supreme Court held the following:

> While there may be evidence that [the seller] should have suspected the presence of asbestos in the Jefferson Building, there is no evidence that [the seller] actually knew of the asbestos. A seller has no duty to disclose facts he does not know. Nor is a seller liable for failing to disclose what he only should have known. Even under the DTPA, a seller is not liable for failing to disclose information he did not actually know.

*Id.* at 162 (internal citations omitted).

Although Peters claims that "[a]ppellees marketed and sold the Audi A8 as a CPO car that had been inspected and was supposed to be like new and safe," she has failed to demonstrate that appellees had actual awareness that the vehicle was not, in fact, "like new and safe." More specifically, Peters has presented no evidence that appellees knew that the windshield had been replaced, and nevertheless, endeavored to deceive her.[9] *See St. Paul Surplus Lines Ins. Co.*, 974

---

[9] In her response to the summary judgment motion, Peters included a photograph of the windshield sticker. On appeal, Peters argues that the sticker "show[s] it is not a factory-installed windshield." She also contends that from this, "Sewell was aware or reasonably should have been aware that the windshield on the CPO Audi A8 had been replaced by a non-Audi dealer." However, Peters did not produce any evidence or testimony explaining the markings on the sticker or how one could conclude from the sticker alone that the windshield was not factory installed or installed by an authorized dealer.

S.W.2d at 53–54. A statement is not fraudulent unless the speaker knew it was false when made or the speaker made it recklessly without knowledge of its truth. *Prudential Ins. Co.*, 896 S.W.2d at 163.

Because Peters failed to present evidence that appellees acted "knowingly" or "intentionally" as required by section 17.50(b) of the DTPA, she cannot overcome the DTPA's general exclusion of claims arising from bodily injury or mental anguish.

We overrule Peters's third issue.

**D.    Breach of Warranty Claims**

In her fourth issue, Peters challenges the trial court's grant of summary judgment as to her breach of implied and express warranty claims. Appellees sought no-evidence summary judgment on these claims, arguing that Peters did not provide the requisite pre-suit notice. *See* TEX. BUS. & COM. CODE § 2.607(c)(1). On appeal, Peters contends that section 2.607 of the Texas Uniform Commercial Code (UCC) does not require pre-suit notice in this case.

**1.    Applicable Law**

To maintain an action for a breach of warranty, a buyer must notify the seller that a breach occurred within a reasonable time after he discovers or should have

---

Further, Peters did not present any testimony interpreting the "Certified pre-owned Program Manual," explaining how Peters's windshield failed to meet the requirements of the CPO certification process.

discovered any breach. *See id.* ("Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]"). The burden of alleging and proving proper notice is on the buyer. *U.S. Tire–Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 200 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (holding that notice requirement is better described as condition precedent for buyer's cause of action than affirmative defense). Failure to notify the seller of the breach, thereby allowing the seller an opportunity to cure, bars recovery for breach of warranty. *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 189 (Tex. App.—Dallas 1996, no writ). While the issue of notice is typically a question of fact, it becomes a question of law if ordinary minds could not differ about the proper conclusion to be drawn from the evidence. *Id.* at 190; *Carroll Instrument Co. v. B.W.B. Controls, Inc.*, 677 S.W.2d 654, 657 (Tex. App.—Houston [1st Dist.] 1984, no writ).

## 2. Analysis

Peters first contends that the section 2.607 notice requirement is inapplicable because her vehicle was a total loss; thus, appellees could not "cure" any breach. Peters does not cite to, nor have we located, any legal authority to support this contention. Further, section 2.607 does not contain any such exception.

We note that the Amarillo Court of Appeals rejected a similar argument in *Barocio v. General Electric Co.*, No. 07-12-00311-CV, 2014 WL 31255 (Tex.

App.—Amarillo Jan. 3, 2014, no pet.) (mem. op.). That case concerned an electrical fire, potentially caused by the blower motor in the appellants' heating and air conditioning system. *See id.* at *1. Though the fire occurred in late 2008, and a report identified General Electric's (GE) motor as the cause of the fire in January 2009, the appellants did not provide notice of the alleged breach to GE until they amended their suit to add GE as a party in October 2011. *Id.* GE moved for summary judgment, arguing the appellants failed to provide the requisite notice under section 2.607(c)(1), and the trial court granted the motion. *Id.* at *2. In affirming the trial court's order, the court of appeals held:

> Under these circumstances, "[i]t would be untenable to allow a buyer, such as [the appellants], to recover damages for breach of warranty from a remote seller or manufacturer who was never even made aware that the product in question was defective and who, consequently, *never had an opportunity to remedy the defect to the buyer's satisfaction before litigation was commenced* or even to inspect the product to ascertain if indeed a defect existed."

*Id.* at *5 (emphasis added) (quoting *Wilcox v. Hillcrest Mem'l Park of Dall.*, 696 S.W.2d 423, 424–25 (Tex. App.—Dallas 1985), *writ ref'd n.r.e.*, 701 S.W.2d 842 (Tex. 1996) (per curiam)). In so holding, the court explicitly overruled the appellants' argument that notice under section 2.607 should be excused "because, after the fire occurred, notice of the alleged defect would be a useless act." *Id.* at *5 n.3. The court noted that "[t]he statute contains no such exception and the

22

[plaintiffs] cite no relevant legal authority for this proposition." *Id.* For the same reasons, we reject Peters's futility argument. *See id.*

Peters further argues that "the UCC's notice provision does not apply to personal injury claims." Peters relies on *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996)[10], which she claims was "cited generally with approval" by this court in *U.S. Tire-Tech,* 110 S.W.3d at 202. Our decision in *U.S. Tire-Tech* did not cite *Connick* for the purported rule asserted by Peters; instead, we cited *Connick* in holding that notice to the marketer of Tire-Tech's product did not "satisfy [the plaintiff's] notice requirement toward Tire-Tech." *Id*. Further, *U.S. Tire-Tech* did not involve personal injury claims.

Lastly, comment 5 to section 2.607 contemplates a notice requirement in personal injury cases:

> Under this Article various beneficiaries are given rights for injuries sustained by them because of the seller's breach of warranty. Such a beneficiary does not fall within the reason of the present section in regard to discovery of defects and the giving of notice within a reasonable time after acceptance, since he has nothing to do with acceptance. *However, the reason of this section does extend to requiring the beneficiary to notify the seller that an injury has occurred. What is said above, with regard to the extended time for reasonable notification from the lay consumer after the injury is also applicable here; but even a beneficiary can be properly held to the*

---

[10]   Peters does not cite any Texas case law to support her argument. We are not bound to follow decisions from other jurisdictions. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (holding Texas courts are only obligated to follow decisions by higher Texas courts and United States Supreme Court).

> *use of good faith in notifying, once he has had time to become aware of the legal situation.*

TEX. BUS. & COM. CODE § 2.607 cmt. 5 (emphasis added); *see also Ibarra v. Nat'l Const. Rentals, Inc.*, 199 S.W.3d 32, 37–38 (Tex. App.—San Antonio 2006, no pet.) (discussing comment 5). Following this logic, if a beneficiary must provide notice to a seller of any personal injury resulting from the seller's breach of warranty, then a buyer must as well. *See* TEX. BUS. & COM. CODE § 2.607 cmt. 5; *Ibarra*, 199 S.W.3d at 38.

We overrule Peters's fourth issue.

## E.     Res Ipsa Loquitur

As explained earlier, Peters did not receive a ruling on her motion to compel discovery from VWGoA and therefore did not preserve any error regarding her motion to compel. Peters acknowledges that she does not have the necessary manufacturing or design documents to support her product liability or negligence claims. Further, Peters's only expert—Ziejewski, an accident reconstructionist and biomechanics expert—specifically testified that he was "not designated as a design expert" and that design was "not [his] issue." He further testified that he "[is] not a design expert [in this case]."

Thus, Peters relies on the doctrine of res ipsa loquitur to save her negligence and strict product liability design and manufacturing defect claims from appellees'

no-evidence motion for summary judgment.[11] Specifically, Peters contends that "there is no reasonable explanation for the rear-view mirror malfunction and dislodging, which caused [her] injuries, other than the negligence or other misconduct of Defendants."

## 1. Applicable Law

Res ipsa loquitur is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided that (1) the character of the injury is such that it would not occur without negligence; and (2) the instrumentality which caused the injury is shown to have been under the management and control of the defendant. *Sanders v. Naes Central, Inc.*, 498 S.W.3d 256, 258 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Jones v. Tarrant Cnty. Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982)). The effect of successfully invoking the doctrine of res ipsa loquitur is that a plaintiff can survive no-evidence procedural challenges: "[H]e has produced some evidence of the defendant's negligence." *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 251 (Tex. 1974). Unless the plaintiff can demonstrate both factors, it cannot reasonably be

---

[11] Peters's negligence claims are intertwined with her strict liability claims. Peters's Second Amended Petition alleges that "Defendants were negligent in designing, manufacturing, installing, inspecting, testing, and servicing the Audi A8, and its component parts."

At the summary judgment hearing, Peters clarified that her design and manufacturing defect claims applied only to VWGoA, not Sewell.

inferred from the circumstances of the accident that the defendant was negligent. *Sanders*, 498 S.W. 3d at 258.

## 2. Analysis

Even assuming without deciding that Peters has established the first factor, we nevertheless conclude that Peters has failed to produce any evidence demonstrating the second factor: that the injury-causing instrumentality (here, the rearview mirror) was under the "management and control" of appellees.

> The Texas Supreme Court has explained that the "control" requirement
>
> is not a rigid rule that the instrumentality must have always been in the defendant's possession or even that it must have been in the defendant's control at the time of the injury. *It is sufficient if the defendant was in control at the time that the negligence inferable from the first factor probably occurred*, so that the reasonable probabilities point to the defendant and support a reasonable inference that he was the negligent party.

*Bell*, 517 S.W.2d at 251 (emphasis added).

Here, however, we cannot reasonably infer that either of the appellees was the negligent party because (1) the accident occurred after the vehicle left appellees' control, and (2) Auto Glass was in control at the time the alleged negligence occurred. *See id.* Peters herself summarized her theory of the case in her response to appellees' motion to designate Auto Glass as a responsible third party:

> This is a product liability case in which Plaintiff Folusho Peters suffered severe physical injuries, including permanent eye injuries and

26

> facial injuries resulting in 5 surgeries to repair the damage to her eye and facial injuries, when the rear-view mirror on her 2014 Audi A-8L came off its base on the windshield in a single-car crash and struck her in the face with great force. . . . The car's windshield, which had been replaced by Auto Glass some months before Plaintiff purchased the A8 as a "Certified Preowned vehicle" ("CPO") from Defendant Sewell in July 2017, did not suffer any cracks or other visible damage.

> Thus, it is undisputed that the rear-view mirror *was the cause* of Plaintiff's injuries.

(emphasis in original). As outlined by Peters in the foregoing, Auto Glass—not appellees—controlled the vehicle at the time the alleged negligence occurred—the time of the windshield replacement. Auto Glass replaced the windshield "months before" Peters purchased the vehicle from Sewell, and long after the vehicle left the control of VWGoA in 2014. Thus, appellees were not "in control at the time that the negligence inferable from the first factor [of the res ipsa loquitur test] occurred," and res ipsa loquitur is inapplicable to Peters's claims against appellees. *See Bell*, 217 S.W.2d at 251; *Disc. Tire Co. of Tex., Inc. v. Cabanas*, 553 S.W.3d 566, 570, 571–72 (Tex. App.—San Antonio 2018, pet. denied) (holding that "a lapse in the defendant's control may make the [res ipsa] doctrine inapt"; court concluded res ipsa loquitur did not apply where tire detached *two days* after defendant rotated vehicle's tires).

Peters has failed to produce any evidence of appellees' negligence or a design or manufacturing defect, and she has not shown a res ipsa loquitur inference

applies. We therefore overrule Peters's second issue and affirm the trial court's grant of no-evidence summary judgment as to those claims.

## Conclusion

Having found no error in the trial court's grant of summary judgment in favor of appellees, we affirm the order of the trial court.

Amparo Guerra
Justice

Panel consists of Justices Kelly, Goodman, and Guerra.